**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **NEVILS WATTS** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-1039** |
| **N. BURL CAIN, WARDEN** | **SECTION "H"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  On March 26, 2012, the United States Fifth Circuit Court of Appeal authorized Watts to file this successive petition.  Rec. Doc. No. 3-1, p. 100; *see also In re Watts*, No. 12-30158, Order (5th Cir. Mar. 26, 2012).  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Nevils Watts ("Watts"), is a convicted prisoner incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On April 19, 1993, Watts and a co-defendant, Patrick

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 6.

Cassius McClendon, were indicted by a Grand Jury in Washington Parish for the first degree murder of Michael R. Myres.[3]

The record reflects that, on December 14, 1992, at around 4:00 p.m., Watts and McClendon shot Michael Myres during a cocaine transaction in Bogalusa, Louisiana.[4]  The two men apparently formed a plan to rob Myres of a large amount of cocaine.  McClendon drove a burgundy Oldsmobile Delta 88 to Bogalusa from his home in Columbia, Mississippi.  With him were his friend, Dorothy Mallard, who rode in the front seat, and Watts, who rode in the back seat.  When they arrived in Bogalusa, McClendon stopped and spoke with Myres.  Myres briefly left  apparently to retrieve the cocaine.  When he returned, Myres got into the back seat of the car with Watts.

While in the car, McClendon pulled out a gun and pointed it at Myres.  The two men began to struggle and McClendon shot Myres.  Mallard exited the front seat of the car when the shot was fired.  Myres then exited the backseat of the car and, when he did, Watts shot him.  When she heard the second shot, Mallard got back into the car, and McClendon quickly drove away and headed to Hattiesburg, Mississippi.  Mallard later informed police that, at some point before the shooting, McClendon and Watts took two "cookies" of cocaine from Myres.

Myres died as result of the wound from McClendon's bullet, which entered his upper right chest and lodged in his spine.  The second bullet, from Watts's gun, entered the back of Myres's right leg and exited his thigh; the shot was not fatal.

---

[3]St. Rec. Vol. 1 of 10, Indictment, 5/19/93.  Watts was also identified in the indictment by the alias "Anthony M. Bell."  St. Rec. Vol. 1 of 10, Indictment, 4/19/93.

[4]The facts of the case were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  *State v. Watts*, 686 So.2d 177 (La. App. 1st Cir. 1996) (Table); St. Rec. Vol. 6 of 10, 1st Cir. Opinion, 96-KA-0582, pp. 2-4, 12/20/96.

Based on information from eyewitnesses, the police were able trace the Oldsmobile to the home of McClendon's girlfriend, Monica Pace, in Columbia, Mississippi.  The day after the murder, McClendon was arrested at Pace's home.  The police also seized a bag containing a large amount of cocaine and the .25 caliber pistol McClendon used to fatally wound Myres.  Almost one month later, on January 15, 1993, the police tracked down Watts and apprehended him in Columbia, Mississippi after a lengthy car and foot chase.

Watts and McClendon were jointly tried before a jury on April 3, 4, 5 and 6, 1995, and they each were found guilty of the lesser included offense of second degree murder.[5]  At a hearing on April 24, 1995, the Trial Court denied each of their motions for post-verdict judgment of acquittal and for new trial.[6]  After waiver of legal delays, the Trial Court sentenced Watts and McClendon each to serve the mandatory life sentence in prison at hard labor without benefit of parole, prison, or suspension of sentence.

In a separately filed direct appeal to the Louisiana First Circuit Court of Appeal, Watts's appointed counsel asserted three errors:[7] (1) the Trial Court erred in improperly admitting evidence of Watts's flight from police prior to his arrest; (2) the Trial Court erred in improperly instructing the jury that flight potentially indicated guilt; and (3) the Trial Court erred in overruling Watts's objection to the hearsay testimony of the coroner, Dr. Roger Casama.  On December 20, 1996, the

---

[5]St. Rec. Vol. 1 of 10, Trial Minutes (4 pages), 4/3/95; Trial Minutes (4 pages), 4/4/95; Trial Minutes (4 pages), 4/5/95; Trial Minutes (3 pages), 4/6/95; Jury Verdict Form (Watts), 4/6/95; Jury Verdict Form (McClendon), 4/6/95; St. Rec. Vol. 2 of 10, Trial Transcript, 4/3/95; St. Rec. Vol. 3 of 10, Trial Transcript, 4/4/95; St. Rec. Vol. 4 of 10, Trial Transcript, 4/5/95; St. Rec. Vol. 5 of 10, Trial Transcript, 4/6/10.

[6]St. Rec. Vol. 1 of 10, Sentencing Minutes, 4/24/95; St. Rec. Vol. 5 of 10, Sentencing Transcript, 4/24/95; Motion for Post-Verdict Judgment of Acquittal (Watts), 4/24/95; Motion for New Trial (Watts), 4/24/95.

[7]St. Rec. Vol. 6 of 10, 1st Cir. Opinion, 96-KA-0582, p. 2, 12/20/96; St. Rec. Vol. 10 of 10, Copy of Appeal Brief.

Louisiana First Circuit affirmed Watts's conviction and sentence finding no merit to the claims raised.[8]

Watts's conviction became final 30 days later, on Tuesday, January 21, 1997,[9] because he did not file for rehearing or timely seek review in the Louisiana Supreme Court. *Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008) (appeal is final when the state defendant does not timely proceed to the next available step in an appeal process) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)).

On January 27, 1997, Watts submitted an untimely[10] writ application for filing with the Louisiana Supreme Court in which he sought review of the appellate court's ruling.[11]  The Court denied the application on October 31, 1997, without stated reasons.[12]

Almost three and one-half years after his conviction was final, on June 9, 2000, Watts submitted an application for post-conviction relief to the Trial Court asserting the following grounds for relief:[13] (1) he was entitled to file an untimely application because the grand jury indictment omitted essential elements of the crime charged leaving the trial court without jurisdiction; (2) he

---

[8]*State v. Watts*, 686 So.2d at 177; St. Rec. Vol. 6 of 10, 1st Cir. Opinion, 96-KA-0582, 12/20/96.

[9]The thirtieth day was Sunday, January 19, 1997, and Monday, January 20, 1997, was Martin Luther King Day, a legal holiday.  La. Rev. Stat. Ann. § 1:55.  The deadline therefore fell on Tuesday, January 21, 1997.  *See* La. Code Crim. P. art. 13 (weekends and holidays not included in calculation of period when it would otherwise be the last day of the period).

[10]Under La. S. Ct. R. X§5, petitioner had 30 days from issuance of the appellate court's opinion to mail or file a writ application in the Louisiana Supreme Court, which he did not do.

[11]St. Rec. Vol. 10 of 10, La. S. Ct. Writ Application, 97-KH-0459, 2/20/97 (postmarked 1/30/97, dated 1/27/97); St. Rec. Vol. 6 of 10, La. S. Ct. Letter, 97-KH-0459, 2/20/97.

[12]*State v. Watts*, 703 So.2d 13 (La. 1997); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 97-KH-0459, 10/31/97.

[13]St. Rec. Vol. 6 of 10, Uniform Application for Post-Conviction Relief, 6/13/00 (dated 6/9/00).

was denied effective assistance of counsel during pretrial proceedings and at trial; and (3) the grand jury foreperson selection process violated his equal protection and due process rights.

On July 10, 2000, the Trial Court dismissed Watts's application as procedurally deficient for failure to attach the necessary pleadings as required by La. Code Crim. P. art. 926(A).[14]   On rehearing, the Court denied the application for failure to prove grounds for which relief could be granted, citing La. Code Crim. P. arts. 929, 930.2, and 930.3.[15]

The Louisiana First Circuit denied Watts's subsequent writ application on March 23, 2001, finding no merit in the claims raised in the application.[16]   The Louisiana Supreme Court also denied Watts related writ application on January 11, 2002, without stated reasons.[17]

Over eight years later, on March 25, 2010, Watts submitted a second application for post-conviction relief to the state trial court raising the following grounds for relief:[18] (1) a new rule of law supports a finding that he was denied his confrontation rights when the Trial Court allowed the coroner to testify about the autopsy report over the defense counsel's objection; (2) newly discovered evidence indicates that the prosecutor withheld favorable evidence of the deals of leniency/immunity made with State witnesses, Dorothy Mallard and Roderick Earl Johnson, the rap

---

[14]St. Rec. Vol. 6 of 10, Reasons for Judgment, 7/10/00; Notice of Judgment, 7/25/00.

[15]St. Rec. Vol. 6 of 10, Reasons for Judgment, 8/16/00; Notice of Judgment, 8/21/00; Request for Rehearing, 8/8/00.

[16]St. Rec. Vol. 6 of 10, 1st Cir. Order, 2000-KW-2259, 3/23/01.

[17]*State ex rel. Watts v. State*, 807 So.2d 234 (La. 2002); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2001-KH-1283, 1/11/02; La. S. Ct. Writ Application, 01-KH-1283, 5/1/01 (postmarked 4/24/01); St. Rec. Vol. 6 of 10, La. S. Ct. Letter, 2001-KH-1283, 5/1/01 (showing postmark of 4/24/01).

[18]St. Rec. Vol. 7 of 10, Uniform Application for Post-Conviction Relief, 4/8/10 (cover letter dated 3/25/10).

sheets of both witnesses, and the transcript of the initial statement of Johnson, all of which would have proven him to be actually innocent.

On July 13, 2010, the Trial Court denied relief finding that Watts failed to prove his entitlement to relief.[19]  The Louisiana First Circuit, on December 3, 2010, denied Watts's subsequent writ application without stated reasons.[20]

Watts sought review in the Louisiana Supreme Court on December 20, 2010.[21]  The Court denied the application on December 16, 2011, because it sought untimely post-conviction relief, citing La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995).[22]

## II.     Watts's First Federal Petition, Civil Action No. 02-1559"H"

On May 16, 2002, shortly after completing state court review of his first state application for post-conviction relief, Watts filed in this Court a petition for federal habeas corpus relief related to the 1995 second degree murder conviction.[23]  Watts asserted four grounds for relief:[24] (1) the racially discriminatory method used to select the grand jury foreman denied him due process; (2) counsel rendered ineffective assistance of counsel by failing to move to quash the indictment based on the unconstitutional selection of the grand jury foreman, by failing to challenge the illegal jury selection process, and by failing to object to an unconstitutional jury instruction; (3) the indictment was

---

[19]St. Rec. Vol. 9 of 10, Trial Court Order, 7/13/10.

[20]St. Rec. Vol. 7 of 10, 1st Cir. Order, 2010-KW-1458, 12/3/10; St. Rec. Vol. 10 of 10, 1st Cir. Writ Application, 2010-KW-1458, 8/9/10.

[21]St. Rec. Vol. 9 of 10, La. S. Ct. Writ Application, 10-KH-2860, 12/29/10 (dated 12/20/10); St. Rec. Vol. 7 of 10, La. S. Ct. Letter, 2010-KH-2860, 12/29/10 (showing postmark 12/22/10).

[22]*State ex rel. Watts v. State*, 76 So.3d 1194 (La. 2011); St. Rec. Vol. 9 of 10, La. S. Ct. Order, 2010-KH-2860, 12/16/11.

[23]*Watts v. Cain*, Civil Action No. 02-1559"H."

[24]Civil Action No. 02-1559"H," Rec. Doc. No. 1.

6

defective because it omitted essential elements of the crime; and (4) the cumulative effect of the described claims deprived Watts of a fair trial.

On October 28, 2002, the District Judge found Watts's federal petition to have been untimely filed and dismissed the petition with prejudice as time-barred.[25]  After issuance of judgment, the Court denied Watts's request for issuance of a certificate of appealability.[26]  On April 14, 2003, the United States Fifth Circuit Court of Appeal declined to issue a certificate of appealability and dismissed Watts's appeal.[27]

**III.   Watts's Current Federal Petition**

After completing state court review of his second state application for post-conviction relief, Watts sought permission from the United States Fifth Circuit to file a second or successive federal petition for habeas corpus relief.[28]  He argued to that Court, as he does here, that the holding in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), was a new rule of law that would have prevented the coroner from testifying at his trial about the autopsy report when the coroner did not perform the autopsy or write the report.[29]  He also argued that new evidence he discovered in 2009 and 2010 established a claim of prosecutorial misconduct which also would allow him to revive his right to seek federal habeas corpus review.

---

[25]Civil Action No. 02-1559"H," Rec. Doc. No. 6.

[26]Civil Action No. 02-1559"H," Rec. Doc. Nos. 7, 9.

[27]Civil Action No. 02-1559"H," Rec. Doc. Nos. 8, 10.

[28]Rec. Doc. No. 3-1, p. 100; *see also*, *In re Watts*, No. 12-30158, Order (5th Cir. Mar. 26, 2012).

[29]*In re Watts*, No. 12-30158, Motion to File Successive Petition (5th Cir. Feb. 10, 2012).

7

The Fifth Circuit resolved that Watts made a prima facie showing sufficient to permit him to file a second or successive petition for the district court to more fully explore his claims.[30]  The Court, however, referenced the statutory authority of the district court to "dismiss any claims that do not satisfy the successive standard.  *See* [28 U.S.C.] § 2244(b)(4)."[31]

Having received permission from the Fifth Circuit to do so, Watts filed his second petition for federal habeas corpus relief on May 17, 2012.[32]  He asserts two grounds for relief:[33] (1) a new rule of law supports a finding that he was denied his confrontation rights when the Trial Court allowed the coroner to testify about the autopsy report over the defense counsel's objection; (2) newly discovered evidence indicates that the prosecutor withheld favorable evidence of the deals of leniency/immunity made with State witnesses, Dorothy Mallard and Roderick Earl Johnson, the rap sheets of both witnesses, and the transcript of the initial statement of Johnson in violation of his rights to due process and under the confrontation clause, all of which would prove him actually innocent.

The State filed an answer and memorandum in opposition to Watts's petition arguing that the petition is not timely filed and that Watts has failed to present a basis for renewing the one-year federal filing period.[34]  The State also argues that Watts's claims are exhausted, and are impermissibly successive.  The State contends that there is no rule of law and no new evidence to

---

[30]Rec. Doc. No. 3-1, p. 100; *see also*, *In re Watts*, No. 12-30158, Order (5th Cir. Mar. 26, 2012).

[31]Rec. Doc. No. 3-1, p. 100; *see also*, *In re Watts*, No. 12-30158, Order (5th Cir. Mar. 26, 2012).

[32]Rec. Doc. No. 3.

[33]Rec. Doc. No. 3, p. 16.

[34]Rec. Doc. Nos. 15, 16.

support the filing of the petition.  Alternatively, the State argues that Watts's claims are procedurally barred from review and otherwise are without merit.

## IV.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[35] applies to this petition, which is deemed filed in this court under the federal mailbox rule on April 18, 2012.[36]   The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)); *see also Day v. McDonough*, 547 U.S. 198, 205 (2006) (recognizing the AEDPA's statute of limitations as a threshold determination).

The State asserts that Watts did not timely file his federal petition and that his claims are in procedural default.  For the reasons to follow, the Court agrees that Watts petition is not timely filed under the AEDPA and must be dismissed for that reason.  Watts filed a reply to the State's opposition arguing that his petition is timely under § 2244(d)(1)(D), because the newly discovered

---

[35]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[36]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Watts's federal habeas petition on May 17, 2012, when the filing fee was received. Watts signed the form petition and memorandum in support on April 18, 2012. This is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee also would not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 376).

evidence was not developed until January of 2010, ten months after the investigator started investigating the alleged prosecutorial misconduct. Alternatively, he is entitled to equitable tolling for his diligence in pursuing the new claims.

## V.   Statute of Limitations

### A.   Applicability of Limitations Provision to a Successive Petition

As noted above, the Fifth Circuit has granted Watts permission to file a successive petition for writ of habeas corpus. Under § 2244(b)(3)(C), the Fifth Circuit grants applications seeking leave to file a second or successive petition when, upon examining the petition and its supporting documents, "it appears reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive [petition]." *See Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001) (quoting *Bennett v. United States*, 119 F.3d 468, 469-70 (7th Cir. 1997)). The required prima facie showing "'simply a sufficient showing of possible merit to warrant a fuller exploration by the district court.'" *Id*. at 898-99 (quoting *Bennett*, 119 F.3d at 469).

The appellate court's grant of permission to file a successive petition, however, does not automatically entitle a petitioner to review of the merits of the claims presented. Instead, a petitioner who files a successive federal habeas corpus petition must go through a second hurdle in the District Court before the merits of his petition can be considered. *Id*. at 899-900 & n.16; *see Brown v. Lensing*, 171 F.3d 1031 (5th Cir. 1999). As noted in the Fifth Circuit's authorization order, under § 2244(b)(4), the District Court is directed to "dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."

For the District Court's review under § 2244(b)(4), a second or successive petition for writ of habeas corpus is only appropriate in two circumstances: (1) where the petitioner shows that the claim relies on a new rule of constitutional law made retroactive on collateral review; and (2) where the petitioner shows that the claim is based on a newly discovered factual predicate that could not have been discovered earlier with due diligence and the newly discovered evidence establishes by clear and convincing evidence that, but for the constitutional error, no reasonable jury could have found petitioner guilty. *See also* 28 U.S.C. § 2244(b)(2)(A), (B)(i)-(ii).  Watts asserts that both considerations exist in his case to warrant review of his claims brought in this successive petition.

Nevertheless, as part of its review, not only must the District Court determine compliance with § 2244(b)(2) and (4), it should assure that the successive petition also meets another gate-keeping provision of timeliness found in § 2244(d)(1).  *See Rollins v. Cain*, 470 F. App'x 276, 277 (5th Cir. 2012); *In re Henderson*, 462 F.3d 413, 417 (5th Cir. 2006); *Mathis v. Thaler*, 616 F.3d 461, 468 (5th Cir. 2010); *Moore v. Quarterman*, 533 F.3d 338, 340 (5th Cir. 2008); *see also Pruett v. Cockrell*, No. 99-CV-781Y, 2001 WL 1516735, *6 (N.D. Tex. Nov. 21, 2001) (Order adopting Findings and Recommendations); *In re McDonald*, 514 F.3d 539, 543-44 (6th Cir. 2008). Determining whether a successive petition complied with the one-year statute of limitations outlined in § 2244(d) is not a concern of the court of appeals in addressing a request for authorization § 2244(b).  The Fifth Circuit has recognized that, when considering motions pursuant to § 2244(b), it does not have a developed record and cannot determine whether the one-year statute of limitations should be statutorily or equitably tolled, especially considering that the successive petition has not yet been filed.  *See*, *e.g.*, *In re Henderson*, 462 F.3d at 417.  As a result, a determination of compliance with § 2244(d) is left to this District Court as a threshold matter.

For the reasons to follow, Watts's petition is time-barred and, therefore, consideration of his successive petition is not appropriate.  *See Rollins*, 470 F. App'x at 278 (affirming District Court's dismissal for different reasons as time-barred, without addressing the merits); *Rollins v. Cain*, No. 10-1994, 2011 WL 290306, at *5 (E.D. La. Jan. 3, 2011) (Knowles, M.J.) (recommending successive petition be dismissed as time barred or alternatively as meritless), *report adopted*, 2011 WL 291182 (E.D. La. Jan. 25, 2011) (Lemmon, J.) (dismissing successive petition on merits).

**B.**     **Watts's Successive Petition is Time Barred**

The AEDPA as codified at § 2244(d), provides that a habeas petitioner has one of four possible commencement points:

> (1)     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
>> A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
>>
>> C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
>>
>> D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Under a broad reading, Watts concedes that his federal habeas corpus petition is untimely under § 2244(d)(1)(A), having been filed more than one year after the finality of his conviction.  He otherwise asserts that his petition should be found timely under § 2244(d)(1)(C) and (D), claiming that his petition was filed within one year of the issuance of the United States Supreme Court's

opinion in *Melendez-Diaz* and one-year from the discovery of the factual predicate of the prosecutorial misconduct claim. The Court will address each of these possible commencement dates based on the record and pleadings, all of which establish that Watts's petition is not timely before this Court.[37]

### 1.   From Finality of Conviction

Under § 2244(d)(1)(A), a petitioner must bring his § 2254 claim within one year of the date his conviction became final. *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001). The record is clear in this case, that Watts, as concluded in 2002 in connection with his first federal petition, has not met this provision.

Watts's conviction was final on Wednesday, January 2, 1997,[38] which was 30 days after the Louisiana First Circuit affirmed his conviction and sentence. Under the plain language of § 2244, Watts had one year, or until Friday, January 2, 1998, to file a timely federal application for habeas corpus relief, and he failed to do so. Thus, literal application of the statute would bar Watts's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a state post-conviction application to be considered "properly filed" within the meaning of §

---

[37]The Court need not address the applicability of § 2244(d)(1)(B) which has not been asserted by Watts. Under this subsection, the commencement of the federal limitations period would not commence until the removal of a state created and unconstitutional impediment which prevented the petitioner from filing a timely petition. In these proceedings, Watts has not alleged such an impediment and none is apparent from the record. This part is inapplicable to the Court's analysis.

[38]The last day fell on January 1st, which is a legal holiday in Louisiana. La. Rev. Stat. Ann. § 1:55. The final day fell to the next business day, January 2, 1998. *See* La. Code Crim. P. art. 13 (weekends and holidays not included in calculation of period when it would otherwise be the last day of the period).

2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999) (Table). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until 'further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 214 (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

14

In the instant case, Watts's conviction was final on Tuesday, January 21, 1997.  The AEDPA filing period began to run the next day, on January 22, 1997, and did so uninterrupted for 365 days, until January 22, 1998, when it expired.  Watts had no properly filed state post-conviction or other collateral review pending at that time.

As outlined previously, the record shows that Watts filed an untimely writ application with the Louisiana Supreme Court during that time period.  Under La. S.Ct. R. X§5, a writ application must be mailed or filed within 30 days after the appellate court's ruling to be properly filed, timely and reviewable by the Louisiana Supreme Court.  *See Butler*, 533 F.3d at 317.  This rule, along with the requisite prison mailbox rule, required Watts to submit his writ application to prison officials for mailing on or before January 21, 1997, and he did not do so.  Under federal habeas corpus law, an <u>un</u>timely state court filing <u>cannot</u> be considered in the finality or tolling calculation.  *Id.* at 319 (La. S.Ct. R. X§5(a) forbids any extension of time); *Williams*, 217 F.3d at 309-11 (same).  Watts did not sign and submit the writ application until January 27, 1997, and it was not timely filed.

Even if Watts was given credit for the time that writ application was pending, the Louisiana Supreme Court denied the application on October 31, 1997.  Watts did not present another properly filed state post-conviction or other request for collateral review until over two years and seven months later, when on June 9, 2000, he signed and submitted his first state application for post-conviction relief.  By that time, the AEDPA one-year limitations period would have expired.

Watts's federal petition is deemed filed in this Court on April 18, 2012, well over fourteen (14) years after the AEDPA filing period expired on January 22, 1998.  Therefore, Watts's federal petition is not timely filed under § 2244(d)(1)(A).

Unless Watts is entitled to a delayed commencement of the statute of limitations under Subsections C or D of § 2244(d)(1), his federal petition will remain untimely filed. For the following reasons, it is clear that those remaining subsections are not applicable in the instant case.

### 2. From a New Rule of Law Made Retroactive on Collateral Review

Under § 2244(d)(1)(C), the AEDPA limitations period may commence from the date that a new rule of law is recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review. Watts asserts a claim based on *Melendez-Diaz*, 557 U.S. at 305, which was handed down by the Supreme Court on July 25, 2009. However, *Melendez-Diaz* has not been made or recognized by the Supreme Court, the United States Fifth Circuit or any federal circuit court to be retroactively applicable to cases on collateral review. *See King v. Cain*, No. 11-2798, 2012 WL 952818, at *3 (E.D. La. Feb. 7, 2012), *report adopted*, 2012 WL 952807, at *1 (E.D. La. Mar. 20, 2012); *Arita v. Cain*, No. 11-636, 2011 WL 4738666, at *2 (E.D. La. Aug. 25, 2011), *report adopted*, 2011 WL 4738658, at *1 (E.D. La. Oct. 6, 2011), *aff'd on other grounds*, No. 11-31044, 2012 WL 6203190, at *1 (5th Cir. Dec. 13, 2012); *see Adams v. United States*, No. 09-6152, 2011 WL 1792562, at *3 (D.N.J. May 10, 2011) (resolving that because *Melendez-Diaz* was an application of *Crawford v. Washington*, 541 U.S. 36 (2004), which was not made retroactive, there was no Supreme Court precedent to suggest that *Melendez-Diaz* should be applied differently, citing *Whorton v. Bockting*, 549 U.S. 406, 421 (2007)).[39]

---

[39]Persuasive opinions from other district courts also decline to find that *Melendez-Diaz* is retroactive in determining timeliness or entitlement to relief on the merits. *See, e.g.*, *Williams v. Dir., VDOC*, No. 11CV392, 2011 WL 5526371, at *2 (E.D. Va. Nov. 14, 2011); *Mitchell v. Kelly*, No. 09-CV-2845, 2011 WL 2579784, at *8 n.2 (N.D. Ohio Jun. 29, 2011); *Walker v. Johnson*, No. 10CV548, 2011 WL 2119260, at *4 (E.D. Va. Apr. 19, 2011), *report adopted*, 2011 WL 2119141, at *1 (E.D. Va. May 27, 2011), *appeal dism'd*, 449 F. App'x 276 (4th Cir. 2011), *cert. denied*, 132 S.Ct. 2121, *reh'g denied*, 132 S. Ct. 2793 (2012); *Leyja v. Oklahoma*, No. CIV-12-970-W, 2012 WL 4754943, at *2-3 (W.D. Okla. Sept. 10, 2012); *Acevedo v. Lempke*, No. 10CV5285, 2012 WL 360276, at *13 (S.D.N.Y. Feb. 3, 2012).

As a result, Watts reliance on *Melendez-Diaz* as an alternative trigger for commencement of the AEDPA's one-year filing period is misplaced.  The ruling in that case is not a new rule of law made retroactive on collateral review.  Therefore, § 2244(d)(1)(C) is inapplicable and does not affect the timeliness of Watts's claim challenging admissibility of the coroner's testimony or the successive federal habeas petition itself.

### 3.    From Discovery of the Factual Predicate

Under § 2244(d)(1)(D), the AEDPA limitations period commences upon the discovery of the factual predicate of the claim when the factual predicate could not have been discovered earlier through the exercise of due diligence.  This subsection does not delay the commencement of the limitations period until the date on which the factual predicate of a claim was in fact discovered or developed; rather, it delays it only until the date on which it "could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D); *see Manning v. Epps*, 688 F.3d 177, 189-90 (5th Cir. 2012) (finding argument that §2244(d)(1)(D) runs from actual discovery of claim is an "untenable theory."); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (". . . the time commences when the factual predicate 'could have been discovered through the exercise of due diligence', not when it was actually discovered by a given prisoner . . . [and] . . . not when the prisoner recognizes their legal significance.").  Contrary to Watts arguments, the commencement date under this subsection would not begin after he and his investigator fully developed his claim, but rather from the date on which he could have discovered the factual basis for the claim through the exercise of due diligence.

Watts claims that, through the help of a private investigator, newly discovered evidence was found in 2009 and developed through 2010 which would have shown his actual innocence of the

crime for which he stands convicted. Specifically, he alleges that evidence was discovered to show that the prosecutor withheld information about deals of leniency/immunity made with two State witnesses, Dorothy Mallard and Roderick Earl Johnson, which included the failure to produce their complete rap sheets and the transcript of the initial statement made by Johnson to police. He also claims that the trial testimony of Mallard and Johnson was inaccurate and inconsistent with Johnson's pretrial statement to police. He asserts that Johnson originally told police that the woman who exited the car could have been the shooter. He claims that Johnson's pretrial statement would have proven his actual innocence.

The Court first notes that, to the extent Watts's claim is a veiled attempt to assert his actual innocence, this is not alone sufficient to act as a trigger under § 2244(d)(1)(D). In fact, an "actual innocence" claim standing alone is not cognizable in a federal habeas corpus proceeding.

> Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact.

*Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Kincy v. Dretke*, 92 F. App'x 87, 92 (5th Cir. 2004); *Lucas v. Johnson*, 132 F.3d 1069, 1074 (5th Cir. 1998); *Newman v. Cain*, No. 09-4445, 2010 WL 1817771, at *7-8 (E.D. La. Apr. 12, 2010), *report adopted*, 2010 WL 1838064 (E.D. La. May 4, 2010); *Bolton v. Cooper*, No. 07-626, 2007 WL 2713259, at *4 (E.D. La. Sept. 14, 2007). Where, as here, a convicted inmate uncovers new evidence tending to prove his innocence, his recourse is to seek executive clemency, not federal habeas corpus relief. *Herrera*, 506 U.S. at 417.

Thus, because claims of actual innocence based on newly discovered evidence do not state a ground for federal habeas relief <u>absent</u> an independent constitutional violation occurring in the

underlying state criminal proceedings, the newly discovered evidence will not trigger the provisions of § 2244(d)(1)(D). *Hammack v. Quarterman*, No. 06-CV-111, 2006 WL 1831329, at *3 (N.D. Tex. Jun. 30, 2006); *Pruett*, 2001 WL 1516735, at *9; *see also Madison v. Scott*, No. 11CV243, 2012 WL 930932, at *2 (S.D. Miss. Mar. 19, 2012); *Ware v. Secretary, Department of Corrections*, No. 11-cv-418, 2011 WL 5525359, at *6 (M.D. Fla. Nov. 14, 2011) ("Since a free-standing claim of actual innocence is not a cognizable claim, [a prisoner] is not entitled to employ such a claim to reset his time clock under § 2244(d)(1)(D)."); *Tate v. Parker*, No. 06CV99, 2010 WL 2606045, at *2-3 (S.D. Miss. Jun. 22, 2010), *aff'd*, 439 F. App'x 375 (5th Cir. 2011); *Morales v. McNeil*, No. 09-21335-CIV, 2010 WL 2976552, at *4 (S.D. Fla. Jun. 14, 2010) ("Because claims of actual innocence based on newly discovered evidence do not state a ground for federal habeas relief absent an independent constitutional violation, the petitioner would not be entitled to tolling under § 2244(d)(1)(D)."), *report adopted*, 2010 WL 2976550, at *1 (S.D. Fla. July 20, 2010); *Green v. Stevenson*, No. 08-4152, 2009 WL 3562297, at *6 (D.S.C. Oct. 30, 2009).

To the extent Watts's claim is considered to be based on alleged prosecutorial misconduct, *i.e.* the withholding of leniency deals, the transcript and the rap sheets, in violation of his constitutional rights to due process and the confrontation clause, he has not established a basis to proceed under § 2244(d)(1)(D). For the following reasons, the record reflects that the "evidence" on which Watts relies is not "new" and either was discoverable from the state court record or available to the defense at the time of trial in 1995.

### a.     No Evidence of Withheld Deals With State Witnesses

The Court finds that Watts has failed to establish by new or old evidence that the State had or withheld information about any "deals" with any of its witnesses in return for their testimony at

19

trial.  He has not presented any proof from the record, by affidavit or by other means that the State entered into any agreements with Mallard or Watts in exchange for their favorable testimony.  The opinion-based statements made in the private investigator's report and other letters are not evidence and are not credible proof that deals or agreements actually existed between the State and Mallard or Johnson.[40]  The investigator's interpretation of the evidence and personal beliefs about the motivation of the witnesses are not bases for federal habeas corpus relief.[41]  The investigator's conclusions also are not supported by the record.

The record reflects that, on September 7, 1993, Watts's counsel filed a Motion to Reveal the Deal, requesting information of any deal or agreement or immunity granted to any State witness in return for their cooperation and testimony.[42]  The State filed a written answer to the motion on September 16, 1993, stating that the "State has made no deal in the matter with any witnesses."[43] This was reiterated by the prosecutor at the pretrial hearing held September 20, 1993.[44]

Consistent therewith and after persistent questioning by Watts's counsel at trial, Mallard testified that no one talked to her about dropping the charges against her.[45]  On the second day of trial, Watts's counsel requested leave to inquire further about the basis for Mallard's $50,000.00 bond set only a few days after she was arrested in the capital case.  Counsel indicated that the information was for purposes of cross-examination, impeachment, "and to show that she's received

---

[40]*See* Rec. Doc. No. 3-2, p. 2.

[41]*See* Rec. Doc. No. 3-2, pp. 1, 4.

[42]St. Rec. Vol. 1 of 10, Motion to Reveal the Deal, 9/7/93.

[43]*Id.*, Answer to Motion to Reveal the Deal, 9/16/93.

[44]St. Rec. Vol. 5 of 10, Hearing Transcript, p. 7, 9/20/93.

[45]St. Rec. Vol. 3 of 10, Trial Transcript, pp. 116-18, 4/4/95.

a certain sentence for her testimony. . . ."[46]  The Trial Court denied counsel's request stating, "I see no problem to begin with, so there's nothing to remedy."[47]

Later, Watts's counsel questioned Captain Phillip Hill, who interviewed Mallard and arrested her for first degree murder and armed robbery in connection with Myres's death.[48]  Counsel questioned Captain Hill about why and how Mallard was able to get a bond set with capital charges against her.[49]  Hill repeatedly indicated that he did not know about her bond and was not involved in her bond process.[50]  Hill also testified that he did not offer Mallard anything in return for her testimony or statement.[51]

The trial transcript, which is quoted in Watts's state and federal pleadings, shows that Watts's trial counsel suspected the existence of a deal or agreement of leniency with Mallard.  This is apparent from counsel's examination of Mallard and Hill on the first day of trial and from his argument to the court on the second day of trial.  In spite of this glaring concern at trial, the issue was not revisited by Watts on direct appeal or in his first state application for post-conviction relief.

Counsel's motion and cross-examination at trial were based on the same facts and theory on which Watts now bases his claim of prosecutorial misconduct, that is that an alleged deal existed with Mallard for her testimony and that deal was not disclosed to the defense.  While Watts has not presented any proof that such a deal existed, the factual basis for the claim was known and apparent

---

[46]St. Rec. Vol. 4 of 10, Trial Transcript, p. 16, 4/5/95.

[47]*Id*., pp. 16-17.

[48]*Id*., pp. 66, 72-73, 76.

[49]*Id*., p. 77.

[50]*Id*., pp. 77-78.

[51]*Id*., pp. 78-79.

at the time of trial in 1995.  With minimal effort and diligence on his part, Watts could have discovered the claim long before 2009.

Thus, not only is there no evidence, new or old, of an agreement between the State and Mallard, but the basis for Watts claim was known and/or could have been discovered at an earlier time through the exercise of due diligence.  There is no basis to invoke § 2244(d)(1)(D).

With regard to information related to Johnson, Watts also does not point to anything that would suggest or establish that the State had a deal with him in return for his trial testimony.  Watts argues that the information allegedly "uncovered" by the private investigator shows that Johnson was convicted and sentenced on three felony charges between 1994 and 1995, just prior to Watts's trial, and had no charges pending when he gave his pretrial statement.[52]  Johnson reportedly received a sentence of probation on the 1994 conviction and two years in prison on each of the 1995 convictions.  Under a broad reading, Watts suggests that the sentence of probation Johnson received for the 1994 conviction, which was later revoked, could indicate that he received a deal from the State.  The criminal history reported by Watts, however, shows nothing more than the fact that Johnson was convicted and sentenced on multiple occasions before or around the time he testified; this can hardly stand as proof that Johnson was shown leniency in return for his testimony in 1995.  Other than speculation, Watts has pointed to no new evidence or any evidence to establish that a deal existed between Johnson and the State.

Thus, not only is there no <u>new</u> evidence, but there simply is <u>no</u> evidence to support Watts's conclusory argument that the State had agreements or leniency deals with Mallard or Johnson in return for their trial testimony.  Having failed to provide support for this initial point, Watts can not

---

[52]St. Rec. Vol. 8 of 10, Memorandum from Pierce & Associates, LLC, 1/26/10.

establish that the State withheld anything related thereto or that he is entitled to proceed with this untimely filed federal petition.  Watts has not shown that § 2244(d)(1)(D) is applicable in this case.

**b.**     **No Other Withheld Exculpatory or Impeachment Information**

Watts has also failed to establish that the State withheld exculpatory or impeachment evidence, specifically Mallard's rap sheet, Johnson's rap sheet, and Johnson's prior statement, in violation of his constitutional rights.

The record reflects that, on September 7, 1993, in addition to other discovery requests, Watts's counsel filed a Motion for Witness Rap Sheets.[53]  The State responded on September 16, 1993, providing the defense with a copy of Mallard's statement to police and declaring that the State had no rap sheets in its possession, although it had information to show that Mallard had been arrested for drug violations.[54]  The State amended its discovery answers on January 18, 1994, to provide the defense with Johnson's pretrial statement given December 14, 1992, "as possible <u>Brady</u> information."[55]  The State amended its answer again on October 31, 1994, with "possible <u>Brady</u> information," with information from a supplemental police report in which the names of other possible participants in the murder were identified by eyewitnesses who were interviewed at the scene.[56]  Another supplemental answer was filed by the State on March 17, 1995, providing other information sought by the defendants in a supplemental discovery request.[57]

---

[53]St. Rec. Vol. 1 of 10, Motion for Witness Rap Sheets, 9/7/93; Motion for Discovery, 9/7/93.

[54]St. Rec. Vol. 1 of 10, Answer to Discovery, ¶23 and 43, 9/16/93; Answer to Motion for Witness Rap Sheets, 9/16/93.

[55]St. Rec. Vol. 1 of 10, Amended Answer to Discovery Motion, 1/18/94.

[56]St. Rec. Vol. 1 of 10, Supplemental Answer to Discovery, 10/31/94.

[57]St. Rec. Vol. 1 of 10, Additional Answer to Supplemental Request for Discovery, 3/17/95.

The record also reflects that Watts's counsel was given open file discovery and that he reviewed the entire file which he indicated did include most of the information sought in the discovery requests.[58]  At a pretrial hearing on September 20, 1993, the Court directed the State to provide the witness rap sheets.[59]

There is no indication in the record that defense counsel did not receive the promised documents.  Watts's exhibits indicate that the State in fact provided defense counsel with a copy of Mallard's rap sheet.[60]  In addition, the State also informed Watts's counsel during discovery that, although it did not have the rap sheets at that time, Mallard had other drug convictions.[61]

Watts relies on the private investigator's report that discovered that Mallard had a distribution of cocaine conviction in 1997, which he claims is an example of information that would have been relevant at his trial.  This conviction was, however, two years _after_ she testified at Watts's trial and could not have been provided by the State before trial.  Watts's has not shown that the State withheld information about Watts's criminal past.

The same is true of the rap sheet and pretrial statement of Johnson.  As discussed above, the record is clear that the State provided defense counsel with Johnson's pretrial statement well before trial.  In spite of this, however, Watts's counsel did not question or cross-examine Johnson at trial.  In addition, the rap sheet also was provided and/or available to the defense prior to trial.[62]

---

[58]St. Rec. Vol. 5 of 10, Hearing Transcript, pp. 2, 9, 9/20/93.

[59]St. Rec. Vol. 5 of 10, Hearing Transcript, pp. 2, 9, 9/20/93.

[60]Rec. Doc. No. 3-2, p. 1.

[61]St. Rec. Vol. 1 of 10, Answer to Discovery, ¶23, 9/16/93; Answer to Motion for Witness Rap Sheets, 9/16/93.

[62]St. Rec. Vil. 3 of 10, Trial Transcript, p. 135, 4/4/95.

It is unfathomable that Watts would suggest that Johnson's statement and criminal history constitute new evidence or that the documents were withheld by the State. Their existence, and the defense's knowledge thereof, was memorialized in the state trial record and could have been discovered by Watts with any amount of diligence well before the passing of time between 1995 and 2009. Watts has again failed to make a showing sufficient to warrant commencement of the AEDPA one-year limitations period under the provisions of § 2244(d)(1)(D).

### 4. Equitable Tolling is Not Warranted

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, __ U.S. __, 130 S.Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court

failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling.") (quotation omitted); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Watts has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling under any prong of the § 2244(d) computation. The record does not contain any of the extraordinary circumstances previously recognized by the precedent cited above. The record also does not support a finding that Watts was diligent in his efforts to pursue relief on his current claims. Instead, the record reflects that Watts waited over a decade, until 2009, to begin his fishing expedition, with the assistance of a paid private investigator, to search his criminal trial record for possible errors. Nothing that Watts points to is based on newly applicable law or new evidence that was not otherwise already available to the defense at the time of trial. Certainly, any bases for the suppositions and opinions provided by the private investigator *a fortiori*

existed in the state court record which was the basis for "investigative report" on which Watts now relies.[63]  There is no reason in the record to apply equitable tolling in this case.

For the foregoing reasons, Watts has failed to establish an alternative commencement date for the filing of this successive petition or that he is entitled to equitable tolling.  The AEDPA limitations period ran from the date his conviction was final which was well before the filing of this federal petition, just as it was in 2002 when Watts filed his first federal petition.  As calculated above, Watts's federal petition is deemed filed in this Court on April 18, 2012, which was over fourteen (14) years after the AEDPA filing period expired on January 22, 1998.  His petition must be dismissed for that reason without further consideration of his successive claims.[64]

## VI.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Nevils Watts's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

---

[63]*See* Rec. Doc. No. 3-2, pp. 1-2.

[64]For the benefit of the reviewing Court, even if the untimeliness of Watts's petition is overlooked, for reasons similar to those already addressed in this Report, the claims can be dismissed as impermissibly successive under § 2244(b)(4), because Watts has not relied on a new rule of law made retroactive to collateral review nor has he relied on newly discovered evidence or evidence that could not have been discovered sooner with the exercise of due diligence.

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[65]

New Orleans, Louisiana, this 10th day of April, 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[65]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.